IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:12-CV-00307 |
| THOMAS W. SLACK, JR., SHARPER AVIATION SOLUTIONS, INC., DOUGLAS M. PICK, PHARMACEUTICAL TECHNOLOGIES, INC., ANGELA PIEPER, and RICKY ROSE, | § § § § § § § § | Jury Demanded |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants Pharmaceutical Technologies, Inc. ("PTI") and Douglas M. Pick's ("Pick") Motion to Compel Arbitration, filed June 15, 2012 (Dkt. No. 12), and Defendant Angela Pieper's ("Pieper") Motion to Compel Arbitration, filed December 5, 2012 (Dkt. No. 76). The Court having considered the same finds that both motions should be **DENIED** for the reasons set forth below.

I.   **Factual and Procedural Background**

Plaintiff East Texas Medical Center Regional Healthcare System ("RHS") is a regional healthcare system providing a variety of health care services, including administrative services for employee health care benefit plans through HealthFirst TPA, Inc. ("HealthFirst"). HealthFirst is a wholly-owned subsidiary of East Texas Medical Center Regional Health Services, Inc., which is a wholly-owned subsidiary of RHS. HealthFirst is not a party to this litigation. Defendant Thomas W. Slack ("Slack") was an officer of both RHS and HealthFirst.

1

RHS alleges that Defendant Sharper Aviation Solutions, Inc. ("Sharper") was a for-profit business corporation wholly owned by Slack.

Defendant PTI is in the business of designing performance network pharmacy concepts and operates a pharmacy benefits manager for employee health care plans. At all relevant times hereto, Defendant Pick was PTI's CEO and Defendant Pieper was PTI's CFO. Defendant Ricky Rose ("Rose") was a former employee of HealthFirst and later an agent of PTI.

HealthFirst and PTI had entered into a Pharmacy Benefits Administration Agreement (the "Agreement"), which contains an arbitration clause compelling the signatories to settle by arbitration any controversy or claim arising out of the Agreement. In its Complaint, RHS alleges that the defendants committed various acts of racketeering and breaches of fiduciary duties in connection with the Agreement. Prior to RHS filing its Complaint, HealthFirst filed a petition in Smith County District Court, based on much of the same underlying acts and breaches as the present case, against Slack, Sharper, and PTI, among other defendants not party to the present case. There, pursuant to an agreed motion jointly filed by HealthFirst and PTI, the state court referred the breach of contract claim between HealthFirst and PTI to arbitration, which is currently pending.

Defendants PTI and Pick move the Court to compel RHS to arbitrate pursuant to the arbitration clause in the Agreement and to stay all proceedings pertaining to their claims. Defendant Pieper, in a separate motion, essentially re-urges PTI and Pick's motion to compel arbitration and to stay proceedings. In analyzing these motions, the Court will address both motions jointly and as a single motion.

## II. <u>Analysis</u>

### a. *Motion to Compel Arbitration*

Courts perform a two-step inquiry to determine whether to compel a party to arbitrate. *Dealer Computer Servs. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). First, the court must determine whether the parties agreed to arbitrate the dispute. *Id.* Second, the court must determine whether any applicable federal statute or policy renders the claims nonarbitrable. *Id.* With respect to the first inquiry, there are two considerations: whether a valid agreement to arbitrate exists and whether the dispute falls within that agreement. *Id.* Here, RHS is not a signatory to the Agreement and has not agreed to arbitrate.

In limited circumstances, however, a non-signatory to an agreement containing an arbitration clause may be compelled to arbitrate in accordance with that clause. *See, e.g.*, *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) ("Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so.") (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc*, 269 F.3d 187 (3d Cir. 2001); *Thomson-C.S.F., S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *id.* at 358 ("Arbitration agreements apply to nonsignatories only in rare circumstances.") (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002)). The Fifth Circuit has recognized six theories for binding a non-signatory to an arbitration agreement: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary. *Id.* at 356 (citing *Thomson-C.S.F.*, 64 F.3d at 776; *DuPont*, 269 F.3d at 195-97).

Of the six theories for binding a non-signatory to an arbitration agreement, Defendants Pick, PTI, and Pieper ("Defendants") argue that RHS has an agency relationship with

HealthFirst. Defendants however have the burden of proving that HealthFirst signed the Agreement as an agent of RHS and not for themselves alone. *See id.* at 356. "Agency is 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Id.* at 356-57 (citing Restatement (Second) of Agency § 1(1) (1958)). Defendants argue that RHS has an agency relationship with HealthFirst based merely on the fact that HealthFirst is a wholly owned subsidiary of RHS. A corporate relationship alone, however, is generally not sufficient to bind a non-signatory to an arbitration agreement. *See, e.g.*, *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 688 (7th Cir. 2005) (citing *Thomson-C.S.F.*, 64 F.3d at 777). Defendants present no further argument supporting an agency relationship, and do not present argument under any other theory for binding a non-signatory to an arbitration agreement. Accordingly, the Court finds that Defendants' motion to compel arbitration should be and is hereby **DENIED**.

    *b. Motion to Stay*

In the course of arguing its motion to compel arbitration, Defendants cite case law addressing whether a non-signatory defendant can obtain a mandatory stay of litigation under 9 U.S.C. § 3. To the extent Defendants request a stay pending the scheduled arbitration between HealthFirst and PTI, the Court finds that Defendants have not demonstrated an exceptional circumstance justifying a mandatory stay of the litigation under § 3. Section 3 requires a district court to stay a lawsuit when one party demonstrates that any issue involved in the lawsuit is "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3; *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006). The Fifth Circuit has identified several factors for invoking § 3 on the application of a non-signatory: "1) the arbitrated and litigated

disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." *Waste Mgmt. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 343 (5th Cir. 2004) (citing *Hill v. Gen. Elec. Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002); *Harvey v. Joyce*, 199 F.3d 790, 795-96 (5th Cir. 2000)).

As in *Waste Mgmt.*, *Hill*, and *Harvey*, the stay provision under § 3 typically applies to non-signatory *defendants* where the *signatory plaintiff* was compelled to arbitrate claims inherently inseparable from the claims litigated against the non-signatory defendants. *See generally Suzlon Infrastructure, Ltd. v. Pulk*, 2010 U.S. Dist. LEXIS 94413 (S.D. Tex. Sept. 10, 2010) (summarizing cases). For the reasons discussed above, Plaintiff RHS is not compelled to arbitrate any claims it asserts in the present case. Defendants instead attempt to use HealthFirst's arbitration with PTI, stemming from the state court action, as a basis to stay the proceedings here. Even if non-signatory defendants could invoke the stay provision of § 3 upon a non-signatory plaintiff—a proposition for which Defendants provide no authority, and the Court is aware of none—Defendants have not shown that the claims HealthFirst asserts in arbitration stemming from the state court action and the claims RHS asserts before this Court are inherently inseparable. Defendants merely state the naked conclusion that the contentions of RHS and HealthFirst are identical, and that all of the proof required to establish the claims alleged in the state court litigation and the claims alleged in the above-styled case are the same. Beyond such conclusory allegations, Defendants provide no substantive explanation to invoke § 3 on the application of a non-signatory plaintiff. Despite Defendants' naked conclusions, the claims do not appear inherently inseparable on their face. In the arbitration between HealthFirst and PTI, HealthFirst asserts a breach of contract claim. Here, RHS asserts, *inter alia*, claims under Civil

RICO. Unlike a breach of contract claims, RICO requires proof of a pattern of racketeering activity that is connected to the acquisition, establishment, conduct, or control of an enterprise. *See, e.g.*, *In re Mastercard Int'l Internet Gambling Litig.*, 313 F.3d 257, 261 (5th Cir. 2002). Accordingly, to the extent Defendants request a stay pending the scheduled arbitration between HealthFirst and PTI stemming from the state court action, Defendants motion is **DENIED**.

### III. Conclusion

For the reasons stated herein, the Court finds that PTI and Pick's Motion to Compel Arbitration, filed June 15, 2012 (Dkt. No. 12), should be and is hereby **DENIED** in all respects. The Court further finds that Pieper's Motion to Compel Arbitration, filed December 5, 2012 (Dkt. No. 76), should be and is hereby **DENIED** in all respects.

**So ORDERED and SIGNED this 3rd day of January, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE